**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 22-po-07012-KLM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MARK STRAUSS,

      Defendant.

---

**DEFENSE BRIEF:**

**THE COURT SHOULD DISMISS THE CONTEMPT CHARGE AND TERMINATE THE DEFENDANT'S PROBATION**

---

MARK STRAUSS, through counsel Luke W. McConnel of the Civil Rights Litigation Group, PLLC, pursuant to the Court's April 26, 2023, Order, hereby submits his brief addressing (1) the Court's initiation of a criminal contempt charge against Mr. Strauss; (2) the status of the probation revocation proceeding; and, (3) the ultimate disposition of the case.

## SUMMARY OF THE ARGUMENT AND ISSUES

The Court's frustration with Mr. Strauss's performance on probation is understandable; however, Mr. Strauss cannot be charged with criminal contempt for violating his probation. Probation revocations are adjudicated pursuant to a specific set of statutes and rules which prevail over the general contempt powers of the court. Pursuant to the statutes and rules governing probation revocations, criminal contempt is

not an allowable sanction or action by the Court. Therefore, the Court should dismiss the criminal contempt charge.

Mr. Strauss does not contest the alleged violations of his probation and waives a revocation hearing. Upon revocation, the Court can fine Mr. Strauss, place him back on probation, or terminate his probation. The Court should terminate Mr. Strauss's probation and close this case because (a) the probation department recommends termination; (b) there is no enforcement mechanism available to the Court to ensure compliance; and, (c) Mr. Strauss is currently being supervised by probation in Boulder County where, unlike in this case, he faces up to two years in jail for noncompliance.

## FACTUAL AND PROCEDURAL BACKGROUND

This petty offense prosecution traces its origins to a September 2019 traffic stop within Rocky Mountain National Park. A Park Ranger contacted Mr. Strauss in his vehicle, which was stopped on the side of the road. Mr. Strauss exhibited signs of intoxication, admitted to drinking, and was ultimately served with two criminal summonses: one for drinking and driving and one for driving with a revoked license.

Mr. Strauss entered into a plea agreement with the government in which the revoked license violation was dismissed in exchange for his guilty plea to driving under the influence. The Court accepted the plea agreement and sentenced Mr. Strauss in July 2020 as follows:

- Two years unsupervised probation;
- Six months incarceration, suspended;
- Sixty hours community service, with two hours through MADD Victim Impact Panel, to be completed by July 9, 2021;

- Level II Drug and Alcohol Awareness and Alcohol Therapy, Level D (86 hours);
- No new law violations during the period of probation; and,
- Fines and costs of $340.00, due by July 9, 2021.

Since his original plea and sentence, there have been three petitions to revoke Mr. Strauss's probation.

1. <u>Revocation One</u>

The first revocation proceeding was initiated on August 2, 2021, by the government. In their petition and a later supplement, the government alleged that Mr. Strauss had not provided proof of completing any of his probation requirements and had been charged and pled guilty to a new law violation in state court. At a revocation hearing on October 7, 2021, which Mr. Strauss did not contest, the Court revoked Mr. Strauss's unsupervised probation and resentenced him to 2 years supervised probation. In addition to the standard and original terms of probation, the Court ordered that Mr. Strauss ingest Antabuse if medically safe, abstain from alcohol, and participate in a program of monitored sobriety. The Court also sentenced Mr. Strauss to a maximum term of six months in the Bureau of Prison ("BOP") as a special condition of probation and ordered him to surrender by November 17, 2021. Mr. Strauss reported for his BOP sentence as directed and was released on May 16, 2022.

2. <u>Revocation Two</u>

The second revocation was initiated in September 2022 by probation. Probation alleged that during his second stint on probation, Mr. Strauss had been unable to abstain from consuming alcohol and had not complied with instructions to begin his

alcohol related treatment and therapy. At a detention hearing on September 23, 2022, Mr. Strauss was released on a personal recognizance bond because he had already served the maximum prison sentence  and further incarceration was prohibited. Mr. Strauss once again did not contest his alleged violations and a sentencing hearing was set a few days later. At the sentencing hearing, all parties agreed that Mr. Strauss could not be given any additional incarceration because he had already served a maximum term. Consequently, the Court revoked Mr. Strauss's probation and resentenced him to probation for an additional 18 months. However, this time, in addition to the conditions of probation previously imposed, the Court also required that Mr. Strauss install an interlock device on any vehicle he owned or operated.

      3.  Revocation Three

      The third revocation is pending before the Court. On April 13, 2023, the probation department filed a petition requesting a summons and alleging further noncompliance by Mr. Strauss. This time, probation alleged Mr. Strauss failed to participate in substance abuse testing, failed to abstain from alcohol, failed to complete community service, and failed to comply with the ignition interlock requirement[1].

      At the initial appearance on April 26, the Court denied probation's petition to revoke Mr. Strauss's probation. (Doc. 30, April 26, 2023, Hrg. Trans. at p. 4:18-19; p. 8:15-16; p. 8:25-9:1). Instead, the Court announced that it would charge Mr. Strauss with criminal contempt, citing primarily to 18 U.S.C. §3148(c) for its authority to do so.

---

[1] Although the Court stated at the initial appearance that Mr. Strauss continues to drink and drive, probation does not allege this in their complaint and there is no record evidence to support such an allegation. *See* Doc. 30, April 23, 2023, Hrg. Trans. at p. 4, ln. 15-16.

(Doc. 26, 30). Although the Court denied the petition to revoke, the case was set for a contempt hearing and a revocation of probation hearing on June 13. The Court also ordered the parties to submit briefing on the issues presented no later than June 6.

## ARGUMENT

**A.  THE COURT'S CONTEMPT POWERS DO NOT APPLY TO PROBATION REVOCATIONS. THUS, THE CONTEMPT CHARGE SHOULD BE DISMISSED.**

    1.  18 U.S.C. §3148(c) does not provide contempt authority to the Court in this case. 18 U.S.C. §3565 governing probation revocations doesn't either.

The Court incorrectly relied on 18 U.S.C. §3148(c) for its authority to charge Mr. Strauss with criminal contempt. This is a post-conviction probation revocation proceeding controlled by the probation revocation statutes and applicable rules of criminal procedure. In charging Mr. Strauss with criminal contempt, the Court incorrectly relied on a statute pertaining to pretrial release which is inapplicable here.

18 U.S.C. §3148 has no bearing on this case because it pertains to sanctions for violations of release conditions imposed on pre-trial defendants. Subsection (c) only authorizes a "judicial officer to commence a prosecution for contempt…if the person has violated a condition of release." 18 U.S.C. §3148(c). Mr. Strauss is not alleged to have violated a condition of his pre-trial release, nor could he be, because he has already been convicted and is on probation. Therefore, section 3148 provides no authority for the Court to charge Mr. Strauss with criminal contempt in this case.

In contrast to 18 U.S.C. §3148, the statutes and rules governing probation revocations do not authorize the Court to initiate a criminal contempt charge for the same conduct forming the basis for a probation violation. Rule 32.1(d) of the Federal

Rules of Criminal Procedure directs that the Court's disposition of a probation revocation is governed by 18 U.S.C. §3563 and §3565. Contempt is not mentioned in Rule 32.1. Likewise, 18 U.S.C. §3565, which specifically governs probation revocations, does not contain a provision allowing criminal contempt as a sanction upon revocation of a probation sentence. 18 U.S.C. §3565 gives the court only two options if a defendant violates probation: (1) continue the defendant on probation with the same or different terms, or (2) revoke probation and sentence under subchapter A. 18 U.S.C. §3565(a). Section 3565 provides no authority for a criminal contempt charge against a defendant who is only accused of violating their probation as Mr. Strauss is here.

In interpreting the plain language of §3565, there is a presumption that because Congress excluded contempt as a sanction it does not apply to probation revocations. "Negative implications raised by disparate provisions are strongest in those instances in which the relevant statutory provisions were considered simultaneously when the language raising the implication was inserted." *Gomez-Perez v. Potter*, 553 U.S. 474, 486 (2008)(internal quotations omitted). The negative implication is very strong here as 18 U.S.C. §3148 and §3565 were both enacted in 1984 as part of the same piece of legislation. *See* Pub.L. 98-473, Title II, Oct. 12, 1984, 98 Stat. 1983, 1995. Thus, it is presumed that Congress intended to exclude contempt as a sanction for probation violations by not including it in the statutory language of section §3565 (but including it in §3148). This interpretation is further supported by a similar exclusion discussed below in 18 U.S.C. §3583 pertaining to violations of supervised release.

2. <u>The specific statutes and rules governing probation revocations control over the general statutes providing for the Court's contempt authority.</u>

In addition to the negative implication canon, the general/specific canon (*generalia specialibus non derogant*) supports the conclusion that contempt is not an available sanction for violating probation. It is true that the Court's contempt powers are broadly defined by Congress. Congress has given magistrate judges the power to punish "criminal contempt constituting disobedience or resistance to the magistrate judge's lawful writ, process, order, decree, or command." 28 U.S.C. §636(e)(3); *also see* 18 U.S.C. §401(3)(using identical language). Nonetheless, these very general and broadly defined contempt powers are inapplicable when there is a more specific statute covering disobedience to a particular type of court order. While a judgment sentencing a defendant to probation and setting forth the terms of probation arguably fits into the general and broad definition of a "writ, process, order, decree, or command," it is a particular type of court order the violation of which is governed by a more specific statute; viz. 18 U.S.C. §3565.

"Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari*, 417 U.S. 535, 550-551 (1974); *Gozlon-Peretz v. U.S.*, 498 U.S. 395, 407 (1991). Congress has specified in §3565 how probation revocations are to be adjudicated. *Also see* Fed. R. Crim. P. 32.1(d)(directing that probation revocations are to be adjudicated pursuant to §3565). Here, Congress has enacted a specific statute covering violations of a court's order of probation and there is no clear intent that Congress meant for the court's general contempt powers to control or nullify the specific

and exclusive remedies contained in §3565. Contrast that with 18 U.S.C. §3148, in which there is a clear intention to include the court's general contempt powers by its inclusion in the statute.

This reading is also supported by the legislative history of 18 U.S.C. §3583 governing violations of supervised release[2]. When 18 U.S.C. §3583 was originally enacted in 1984—in the very same bill as 18 U.S.C. §3148 and §3565—it contained a provision which authorized a court to "treat a violation of a condition of a term of supervised release as contempt of court pursuant to section 401(3) of this title." *See* Pub.L. 98-473, Title II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 1999. However, in 1988, §3583 was amended by Congress and the provision authorizing contempt was removed from the statute. *See* Pub.L. 100-690, Title VII, §§ 7108, 7303(b), 7305(b), Nov. 18, 1988, 102 Stat. 4418, 4464, 4465; *also see,* 134 Cong. Rec. H11108-01 §7108 available at 1988 WL 182261 (explaining that 102 Stat. 4181 §7108(b)(2) "amends 18 U.S.C. §3583(e) by striking out paragraph (3), which provides that the court can treat a violation of a condition of a supervised release as a contempt of court under 18 U.S.C. §401(3)"). In *U.S. v. Bronson*, No. 05-CR-714 (NGG), E.D. New York, 2007 WL 2455138, the Court analyzed whether a criminal contempt charge pursuant to §401(3) is cognizable based upon an alleged violation of supervised release. In a thorough analysis of the issue, not only did the court conclude that the 1988 amendments signified a Congressional intent to eliminate contempt as an available

---

[2] There is distinct overlap and similarity between 18 U.S.C. §3565 (probation revocations) and 18 U.S.C. §3583 (supervised release violations) in that both are governed by Fed. R. Crim. P. 32.1 and both apply post-conviction.

sanction for violating supervised release, but the court also held that the comprehensive scheme in §3583 controlled over the more general provisions of contempt under §401. *Bronson*, at *6. Thus, the court in *Bronson* concluded that because contempt is not included in §3583 as a sanction for violating supervised release, it was not available to the court. The same is true for 18 U.S.C. §3565 and probation revocations.

Therefore, a proper interpretation of 18 U.S.C. §3565 leads to the inescapable conclusion that criminal contempt is not an available sanction for a violation of probation.

This interpretation is consistent with the complete lack of caselaw supporting a contempt charge for the same conduct constituting a violation of probation. Counsel has been unable to locate a single federal case nationwide where a court charged a defendant with criminal contempt for violating probation. Arguably, if Mr. Strauss was accused of doing something contemptuous separate from, and in addition to, his alleged violations of probation—e.g. failing to appear for court or disrupting a proceeding—the Court could invoke its contempt powers under 28 U.S.C. §636(e) and 18 U.S.C. §401. But that is not the case here. Based upon the record made by the Court at the initial appearance, the Court charged Mr. Strauss with contempt for violating his probation and nothing more[3].

Finally, the Court's charging of Mr. Strauss with contempt for violating his probation would serve as an end-run around the statutes pertaining to probation

_____

[3] Fed. R. Crim. P. 42(a)(1) requires the Court to give a person it is charging with contempt "notice in open court, in an order to show cause, or in an arrest order" of "the essential facts constituting the charged criminal contempt and describe it as such."

violations. This could include subjecting a defendant to penalties, including incarceration, that exceed what is allowable for the offense of conviction. And while the jail sentence available to a magistrate judge for criminal contempt is limited to 30 days pursuant to 28 U.S.C. §636(e)(5), the logical endpoint of the court's approach is not limited to contempt imposed by magistrate judges. Considering the broad authority of district courts to sentence criminal contempt without restriction, this Court's approach could expose a defendant to penalties that far exceed what the original offense of conviction statutorily allows. This is surely not the law. In the case of Mr. Strauss, he has already served the maximum term of incarceration authorized by statute. Thus, any jail time the Court were to give him for violating his probation—conduct which is tied to his original conviction and the sentence therefrom—would exceed that maximum and be illegal. There is no suggestion that Congress intended for the Courts contempt powers to supersede and swallow whole specific statutory enactments and to allow for sentences that could exceed statutory maximums based on conduct that is entirely related to an underlying conviction.

Thus, for the foregoing reasons, the Court should dismiss the criminal contempt charge against Mr. Strauss and adjudicate this matter pursuant to Fed. R. Crim. P. 32.1 and 18 U.S.C. §3565.

## B.  MR. STRAUSS'S PROBATION SHOULD BE REVOKED AND TERMINATED.

Mr. Strauss does not contest the allegation that he violated his probation, and he waives a revocation hearing pursuant to Fed. R. Crim. P. 32.1(b)(2). Thus, the Court should revoke Mr. Strauss's probation leaving sentencing as the only remaining issue

before the Court. As a sentence, the Court should terminate Mr. Strauss's probation and close the case.

At the initial appearance on April 26, the Court observed that it was "not in the business of putting dangerous people back in the community on an unsupervised basis, and that's what would happen here if Mr. Strauss's probation revoked." (Doc. 30, April 26, 2023, Hrg. Trans. at p.8:17-21). However, contrary to the concern expressed by the Court at the last court appearance, if the Court terminates Mr. Strauss's probation, he will not be back in the community unsupervised: he will still be subject to probation supervision in his Boulder County case. Furthermore, unlike in this case, Mr. Strauss faces up to 24 months in jail should he fail to comply with his probation in Boulder County. Thus, regardless of what this Court does, Mr. Strauss will be subject to continued monitoring and/or significant sanction in his state case. Currently, Mr. Strauss is pending revocation of his probation in Boulder County and is set for court on June 29, 2023 at 2:30 pm.

Since Mr. Strauss was placed on probation in Boulder County, there has been significant overlap and coordination in the probation supervision from both cases. For example, the probation officers in this case have been relying on the Boulder County probation for the random urine screens and for his alcohol education classes. One reason it makes sense to terminate Mr. Strauss's probation, and a likely reason why probation makes such a recommendation here, is that there isn't really anything of benefit that the federal probation department can provide in addition to what state probation can do. And since the federal probation has no enforcement mechanism in

the form of any available sanction, it does not make sense to allocate the resources necessary to further supervise Mr. Strauss. It would be a different matter if termination in this case meant that Mr. Strauss would be unsupervised, but that is not the case.

Putting aside the possibility of a sentence to the county jail, the terms and conditions of Mr. Strauss's probation in Boulder County include a substance abuse evaluation and treatment, compliance with a protection order, no alcohol or drugs, substance abuse monitoring, no weapons, and domestic violence treatment. Mr. Strauss was also accepted into the Adult Integrated Treatment Court ("AITC"). According to the AITC handbook,

> "The mission of the Integrated Treatment Court is to integrate substance abuse treatment, intensive supervision, and substantial judicial oversight to promote public safety and individual responsibility, to reduce crime, and to improve the quality of life for participants and their families.
> The purpose of the AITC is to help participants to develop the skills necessary to attain long-term sobriety. Participants must progress through five phases in order to successfully complete the program."

The AITC provides a significantly higher level of supervision and care than offered by the federal probation department for this type of case. And this is the type of supervision and support Mr. Strauss is exposed to in his Boulder case, which is enforceable through significant possible jail time and will be in place even if this Court terminates the probation supervision in this case.

## CONCLUSION

Ultimately, the Court is bound by the penalties and options provided by Congress. While it is strange that a person can get no more than six months in jail but

up to five years probation for a petty offense, that is the law. The Court simply cannot sentence Mr. Strauss to more jail time in this case and charging him with criminal contempt is not a work around to that limitation. All the Court is empowered to do is fine Mr. Strauss and/or place him back on probation. Under the circumstances here, both of those outcomes are futile. Thus, the Court should simply terminate Mr. Strauss's probation knowing that he will continue to be supervised in Boulder County and face significant penalty there if he continues to violate his probation or otherwise pose a significant risk to the community.

Respectfully submitted this 6th day of June, 2023.

/s/ Luke W. McConnell
**Luke W. McConnell, #40414**
Civil Rights Litigation Group, PLLC
1543 Champa Street, Suite 400
Denver, CO 80202
(720) 515-6165
luke@rightslitigation.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 6th day of June, 2023, a true and correct copy of the foregoing **DEFENSE BRIEF** was filed electronically via ECF with the Clerk of the Court and to the following email addresses:

Nicole Cassidy
Assistant United States Attorney
District of Colorado
1801 California Street, Suite 1600
Denver, CO  80202
Phone: (303) 454-0100
*Nicole.Cassidy@usdoj.gov*

Attorney for Government

/s/ Luke W. McConnell
Luke W. McConnell